IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO: 1:15-CR-25 |
| ) | |
| ) | Count 1: 18 U.S.C. § 371 (Conspiracy to |
| v. ) | Commit Bribery) |
| ) | |
| ) | Counts 2-4: 18 U.S.C. § 201 |
| IVAN DWIGHT BRANNAN, ) | (Bribery of a Public Official) |
| ) | |
| Defendant. ) | |
| ) | Forfeiture Notice |

### INDICTMENT

THE GRAND JURY CHARGES:

1. The "relevant period" for purposes of this Indictment is from in or about January 2006 continuing through in or about April 2012. Unless stated otherwise, all events described herein occurred in or around the relevant period.

I. **GENERAL ALLEGATIONS**

  A. **The Defendant**

2. During the relevant period the defendant, IVAN DWIGHT BRANNAN, was a broker agent for a long-haul trucking company, Company A. BRANNAN solicited transportation business from customers of Company A in the southeastern United States and took shipping orders from these customers on behalf of Company A.

  B. **The Trucking Company and Relevant Government Entities**

3. Company A is a trucking company based in Louisville, Kentucky. Company A has 400 employees in eighty-five offices in the United States and Canada. Company A delivers commercial and military freight via semi trucks equipped with flatbeds, dry vans, and RGN

(removable gooseneck) trailers. Company A has over 12,800 permanent and partner carrier trucks and over 12,000 customers.

4. The United States Marine Corps ("USMC") is a branch of the United States Armed Forces, a component of the Department of Defense ("DOD"). The USMC is an expeditionary force, responsible for protecting the interests of the United States and the lives of its citizens through combat operations, humanitarian relief efforts, and other missions. There are approximately 200,000 active duty Marines and 40,000 reserve Marines.

5. The Marine Corps Logistics Base ("MCLB-Albany") in Albany, Georgia, is one of two USMC installations in the United States that support the USMC Logistics Command. MCLB-Albany rebuilds and repairs ground combat and combat-support equipment and supports military installations throughout the United States. MCLB-Albany plays a pivotal role in the nation's defense, as much of the military equipment utilized in Afghanistan, Iraq, and other parts of the world is refurbished there. MCLB-Albany employs approximately 4,000 civilians, and approximately 400 Marines are stationed there.

6. The Defense Logistics Agency ("DLA"), a component of DOD, is a combat logistics support agency, providing the USMC and other Armed Forces with logistic, acquisition, and technical services. DLA coordinates the transportation of military equipment to and from military bases, including MCLB-Albany.

7. At MCLB-Albany the DLA Traffic Office plans, arranges, and coordinates the transportation of all secured Protective Security Service ("PSS") and Dual-Driver Protective Service ("DDP") freight from the base. This secured freight includes weaponry and sensitive military equipment. When a load is ready for shipment, the Traffic Office contacts private trucking companies, such as Company A, to transport the freight. The Traffic Office provides the trucking

company with the destination, dimensions, security classification, and any special equipment needed for the load. The trucking company then picks up and transports the shipment.

### C. Relevant Public Officials

8. No later than 1997, Mitchell Potts ("Potts") began working as a transportation assistant in the DLA Traffic Office at MCLB-Albany. Potts was responsible for coordinating shipments of freight from MCLB-Albany to military bases and installations throughout the United States. Potts contacted private trucking companies on behalf of the United States government and arranged for the transportation of military equipment from MCLB-Albany. In or about 2007, Potts was promoted to acting supervisor of the DLA Traffic Office at MCLB-Albany. That promotion was made permanent in or about 2008. As supervisor, Potts was responsible for managing freight shipments, coordinating with privately owned trucking companies such as Company A, and supervising approximately five transportation assistants who planned freight transportation logistics. Potts was removed from his position at the DLA Traffic Office on April 24, 2012.

9. In or about 2003 Jeffrey Philpot ("Philpot") began working as a transportation assistant in the DLA Traffic Office at MCLB-Albany. Philpot's duties included planning freight shipment loads and coordinating their transportation. In or about 2009, Philpot was promoted to a more senior transportation assistant position. He maintained the responsibilities of a transportation assistant while also serving as a resource for information and expertise to other transportation assistants. Philpot reported directly to Potts. Philpot was removed from his position at the DLA Traffic Office on April 24, 2012.

### D. The Trucker

10. Over the relevant period David Nelson ("Nelson") worked as a long-haul trucker for Company A and was based in the southeastern United States. Nelson frequently transported

loads originating from MCLB-Albany. Nelson communicated regularly with BRANNAN, Potts, and Philpot regarding shipments at the base. Nelson was paid approximately $1.5 million by Company A for transporting loads from MCLB-Albany from 2006 through 2012.

### E. BRANNAN's Agencies: PGA & IBG

11. Defendant BRANNAN worked as a broker agent for Company A from 1999 until 2013, soliciting business from customers of Company A and taking shipping orders from these customers. BRANNAN's first agency was formed under the name PGA (Panhandle, Georgia, and Alabama) and operated out of Panama City, Florida. In approximately 2006, BRANNAN formed IBG (It's Better in Georgia), to focus on business in Georgia and the business at MCLB-Albany specifically. In 2006, Company A had approximately $278,652 in transportation business originating from MCLB-Albany. In 2007, after BRANNAN formed IBG, Company A had approximately $6.5 million in transportation business originating from MCLB-Albany. From 2007 through April 2012, Company A had a total of approximately $23 million in transportation business originating from the base. In 2013, after Potts and Philpot had been removed from the Traffic Office at MCLB-Albany, Company A had approximately $218,000 in transportation business originating from the base.

12. BRANNAN was not paid a salary by Company A. His agencies received a commission of approximately four to seven percent of the total billings for each load that BRANNAN or his employees arranged. From 2006 through 2012, BRANNAN's agencies were paid approximately $800,000 in commissions from business originating from MCLB-Albany.

13. From 2006 through at least 2011 BRANNAN frequently communicated with Potts and Philpot regarding Company A's transportation business at the base. BRANNAN also

frequently communicated with Nelson regarding Nelson's transportation of loads from MCLB-Albany.

## II. COUNT 1 – THE CONSPIRACY

### COUNT ONE
### (18 U.S.C. § 371 – Conspiracy to Commit Bribery)

14. The Grand Jury re-alleges paragraphs 1 through 13 as though fully set forth herein.

15. From in or about January 2006 until in or about April 2012, in the Middle District of Georgia and elsewhere, the defendant, IVAN DWIGHT BRANNAN, did knowingly combine, conspire, confederate, and agree with David Nelson, Mitchell Potts, and Jeffrey Philpot, and others known and unknown to the grand jury, to commit the following offenses against the United States:

  a. **Bribery of a Public Official**: that is for BRANNAN and Nelson to, directly and indirectly, corruptly give, offer, and promise a thing of value to public officials – Potts and Philpot – with intent to influence an official act, with intent to influence Potts and Philpot to commit and aid in committing and collude in and allow any fraud and to make opportunity for the commission of any fraud on the United States and with intent to induce Potts and Philpot to do an act and omit to do an act in violation of their official duty, that is BRANNAN and Nelson agreed to offer and give money and other things of value to Potts and Philpot in order to induce Potts and Philpot to award MCLB-Albany shipments to BRANNAN, Nelson, and Company A, in violation of Title 18, United States Code, Sections 201(b)(1)(A), (B), & (C);

  b. **Public Official Accepting Bribes**: that is, for Potts and Philpot to, directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for being influenced in the performance of an official act, for being influenced to commit and aid in committing and collude in and allow any fraud and to make opportunity for the commission of any fraud on the United States, and for being induced to do an act and to omit to do an act in violation of their official duty; that is Potts and Philpot sought, accepted, and received money and other things of value from BRANNAN and Nelson in exchange for awarding trucking transportation shipments from MCLB-Albany to BRANNAN, Nelson, and Company A, in violation of Title 18 United States Code, Section 201(b)(2)(A), (B), & (C).

## THE PURPOSE OF THE CONSPIRACY

16. It was a purpose of the conspiracy for BRANNAN and Nelson to unjustly and unlawfully enrich themselves by paying money and giving other things of value to Potts and Philpot in exchange for lucrative transportation shipments from MCLB-Albany.

17. It was a purpose of the conspiracy for Potts and Philpot to unjustly and unlawfully enrich themselves by soliciting and accepting money and other things of value from BRANNAN and Nelson in exchange for assigning lucrative transportation shipments to Company A through BRANNAN and Nelson.

## THE MANNER AND MEANS OF THE CONSPIRACY

18. The manner and means by which the defendants would and did carry out the conspiracy included, but were not limited to, the following:

19. BRANNAN paid cash money and other things of value to Potts to obtain favorable treatment for Company A in the award of shipping business at MCLB-Albany, which meant more commissions for BRANNAN. BRANNAN also encouraged NELSON to pay cash money to Potts and Philpot to ensure that Company A continued to receive shipments from MCLB-Albany and to ensure that BRANNAN continued to receive commissions.

20. Nelson paid cash money to Potts and Philpot in order to obtain more loads from MCLB-Albany and to make more money.

21. Potts and Philpot solicited and accepted the money and other things of value and used their official government positions to award lucrative shipping business to Company A through BRANNAN and Nelson.

22. BRANNAN used code language to direct Nelson to pay bribes to Potts and Philpot and to confirm that Potts and Philpot were receiving bribes from Nelson.

## OVERT ACTS

23. In furtherance of the conspiracy and to accomplish its unlawful objects, BRANNAN, Nelson, Potts, and Philpot performed and caused to be performed the following overt acts, among others, in the Middle District of Georgia and elsewhere:

### Bribes to Potts and Philpot

24. On or about Christmas Day in 2006 and 2007, BRANNAN mailed cash to Potts. BRANNAN and Potts spoke on the phone regularly during this time and BRANNAN frequently solicited additional business from Potts. BRANNAN gave the Christmas cash to Potts in exchange for Potts continuing to award transportation business from MCLB-Albany to Company A through BRANNAN.

25. On or about March 6, 2007, BRANNAN gave Potts two cruise tickets for a Carnival Cruise to Nassau, Bahamas, for Potts and his fiancé. BRANNAN provided the cruise tickets to Potts as a wedding present in exchange for Potts continuing to award transportation business from MCLB-Albany to Company A through BRANNAN.

26. On or about October 22, 2007, BRANNAN planned an all-expense paid hunting trip for Potts in Perry, Georgia. BRANNAN proposed the trip to a national sales representative for Company A and Company A agreed to pay the expenses for the trip. BRANNAN, another individual, Potts, and the national sales representative for Company A spent four nights at a hunting lodge in Perry, Georgia, and accrued hunting, lodging, meal, and entertainment expenses totaling $5,023.40, all paid for by Company A at BRANNAN's request.

27. From approximately 2006 through 2008, BRANNAN regularly purchased meals for Potts. On at least one occasion at a restaurant where BRANNAN was buying Potts dinner, BRANNAN passed Potts several hundred dollars cash under the table. BRANNAN gave the

7

money to Potts in exchange for Potts continuing to award transportation business from MCLB-Albany to Company A through BRANNAN.

28. In or about late 2006 or 2007, BRANNAN directed Company A driver, David Nelson, to make cash payments to Potts when Nelson picked up loads from MCLB-Albany. BRANNAN continued to regularly encourage and direct Nelson to pay cash money to both Potts and Philpot until at least 2011.

29. In or about 2007, on several occasions BRANNAN repaid Nelson for the money that Nelson paid to Potts. BRANNAN added Truck Rate Adjustments ("TRA's") to Nelson's final payout from Company A to compensate Nelson for the money that BRANNAN directed Nelson to pay to Potts.

30. From in or about 2007 and continuing until in or about April 2012, Nelson continued to deliver cash payments to Potts and Philpot in the DLA Traffic Office when Nelson picked up loads from MCLB-Albany. In total Nelson paid Potts and Philpot more than $120,000.

31. In or about October 2010, Nelson invited Philpot and another employee of the DLA Traffic Office to stop at his home in Moss Point, Mississippi, on their way to Biloxi, Mississippi, for a weekend at the casinos. Philpot and the other employee stopped at Nelson's home and Nelson gave them each $500 cash to spend at the casinos.

**Official Acts**

32. In exchange for the things of value set forth in paragraphs 24-31, Potts and Philpot engaged in official acts to benefit BRANNAN, Nelson, and Company A, including but not limited to the following:

33. From in or about 2006 until in or about April 2012, Potts assigned shipments to Company A through BRANNAN.

34. In or about 2006 and 2007, Potts contacted Nelson directly and assigned him shipments from MCLB-Albany, instead of contacting Company A and allowing Company A to assign a driver for each MCLB-Albany load.

35. On or about January 2, 2008, Potts approved Nelson to be one of several designated drivers for all DDP and PSS loads transported by Company A from MCLB-Albany.

36. From in or about January 2008 and continuing until April 2012, Potts and Philpot assigned lucrative MCLB-Albany shipments to Nelson.

### Concealment

37. From in or about 2008, and continuing until in or about April 2012, BRANNAN regularly called Potts and Philpot to ensure that they were being paid cash money by Nelson and to solicit additional business in exchange. During these calls BRANNAN asked Potts and Philpot whether Nelson had "been in to shake [their] hand[s]," as code for asking whether Nelson had paid Potts and Philpot cash money.

38. From in or about 2007 and continuing until in or about at least 2011, BRANNAN regularly called Nelson and instructed him to "keep feeding them cheeseburgers," as code for telling Nelson to continue paying cash money to Potts and Philpot.

(All in violation of Title 18, United States Code, Section 371)

III. **COUNTS 2-4 – BRIBERY BY BRANNAN**

**COUNT TWO**
**(18 U.S.C. §§ 201(b)(1)(A), (B), & (C) – Bribery of a Public Official)**

39. The allegations set forth in paragraphs 1 through 13 are repeated and re-alleged as if set forth fully herein.

40. From on or about December 25, 2006, and continuing until in or about 2008, in the Middle District of Georgia and elsewhere, the Defendant, IVAN DWIGHT BRANNAN, did,

9

directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, with intent to influence an official act, with intent to influence a public official to commit and aid in committing and collude in and allow any fraud, and to make opportunity for the commission of any fraud on the United States, and with intent to induce a public official to do an act and omit to do an act in violation of his/her official duty; that is BRANNAN gave Potts cash money, meals, two Carnival Cruise tickets, and other things of value, as described in paragraphs 24-27, all while Potts was the supervisor of the DLA Traffic Office at MCLB-Albany, in exchange for Potts awarding shipments to Company A through BRANNAN.

**(All in violation of Title 18, United States Code, Section 201(b)(1)(A), (B), & (C) and Section 3287)**

### COUNT THREE
### (18 U.S.C. §§ 201(b)(1)(A), (B), & (C) – Bribery of a Public Official)

41. The allegations set forth in paragraphs 1 through 13 are repeated and re-alleged as if set forth fully herein.

42. From in or about late 2006 or 2007, and continuing until 2011, in the Middle District of Georgia and elsewhere, the Defendant, IVAN DWIGHT BRANNAN, did, directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, with intent to influence an official act, with intent to influence a public official to commit and aid in committing and collude in and allow any fraud, and to make opportunity for the commission of any fraud on the United States, and with intent to induce a public official to do an act and omit to do an act in violation of his/her official duty and did aid and abet such; that is BRANNAN counseled, commanded, induced, procured, and caused Nelson to deliver cash money to Potts, as described in paragraphs 28-30 and 38, all while Potts was the supervisor of the DLA Traffic Office at MCLB-

Albany, in exchange for Potts assigning shipments to Company A through BRANNAN and Nelson.

(All in violation of Title 18, United States Code, Section 201(b)(1)(A), (B), & (C), Section 2, and Section 3287.)

## COUNT FOUR
### (18 U.S.C. §§ 201(b)(1)(A), (B), & (C) – Bribery of a Public Official)

43. The allegations set forth in paragraphs 1 through 13 are repeated and re-alleged as if set forth fully herein.

44. From in or about 2009, and continuing until 2011, in the Middle District of Georgia and elsewhere, the Defendant, IVAN DWIGHT BRANNAN, did, directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, with intent to influence an official act, with intent to influence a public official to commit and aid in committing and collude in and allow any fraud, and to make opportunity for the commission of any fraud on the United States, and with intent to induce a public official to do an act and omit to do an act in violation of his/her official duty and did aid and abet such; that is BRANNAN counseled, commanded, induced, procured, and caused Nelson to deliver cash money to Philpot, as described in paragraphs 28, 30, and 38, all while Philpot was a transportation assistant in the DLA Traffic Office at MCLB-Albany, in exchange for Philpot assigning MCLB-Albany shipments to Company A through Brannan and Nelson.

(All in violation of Title 18, United States Code, Section 201(b)(1)(A), (B), & (C), Section 2, and Section 3287.)

## V. FORFEITURE NOTICE

45. Paragraphs 1-44 are incorporated by reference as though fully set forth herein.

46. Pursuant to Federal Rule of Criminal procedure 32.2(a), the defendant,

**IVAN DWIGHT BRANNAN,**

is notified that, the Grand Jury further finds probable cause that upon conviction of the offenses alleged in Counts One (1) through Four (4) of this Indictment, they shall forfeit to the United States of America any property, real or personal, which they obtained directly or indirectly and which constitutes or is derived from proceeds traceable to the offenses of conviction. Property subject to forfeiture includes, but is not limited to, the following:

A. **Money Judgment**

47. A money judgment in the amount of approximately $124,000, representing the minimum total amount of proceeds traceable, directly or indirectly, to the conspiracy, that is, the offenses charged in Counts One through Four of this Indictment.

B. **Substitute Assets**

48. If property subject to forfeiture is not available, the United States will seek an order forfeiting substitute assets in accordance with Title 21, United States Code, Section 853(p). (In accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c).)

A TRUE BILL

/S/

FOREPERSON OF THE GRAND JURY

Presented by:

RAYMOND HULSER
Chief
Public Integrity Section
Criminal Division
United States Department of Justice

MICHAEL J. MOORE
United States Attorney
United States Attorney's Office
Middle District of Georgia

K. ALAN DASHER
Assistant United States Attorney

12

_____
JOHN D. KELLER
Trial Attorney


Filed this 22 day of July 2015.

_____
Deputy Clerk